IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ERIC LAMAR HARDEN,

    Petitioner,

v.                                                        CASE NO. 5:12-cv-320-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and is proceeding pursuant to a Second Amended Petition, ECF No. 9. The Petition stems from Petitioner's 2008 Bay County convictions of first degree felony murder with a firearm, robbery with a firearm, and burglary of a dwelling with a firearm, for which he received a life sentence. Respondent filed a response and an appendix with relevant portions of the state-court record. ECF No. 19, Exh. A-FF; ECF No. 20, Exh. W.[1] Although afforded an opportunity to file a reply, Petitioner did not do so. Upon due consideration of the Petition, the Response, and the state-court record the undersigned recommends that

---

[1] Respondent's ECF 20, Exh. W contains Petitioner's medical records, and is filed under seal.

the Petition be denied.[2]

## State-Court Proceedings

The events leading to Petitioner's conviction occurred in October 2006. At trial, the State presented evidence that Petitioner and two other men, Jay Broxton and Ahmad Smith, traveled from Jacksonville to Callaway, near Panama City, to rob Broxton's half-brother, Jamie Edwards, of drugs and money. Edwards was shot and killed during the robbery. Ahmad Smith testified against Petitioner, and other evidence included video surveillance of Petitioner buying items used as disguises during the robbery (caps and bandanas) at a Wal-Mart, cell phone records from calls made by the men during their travels to and from the crime scene that documented their location, and DNA evidence linking Petitioner to a watch found at the scene. Petitioner's convictions and sentence were affirmed *per curiam* without opinion. *Harden v. State*, 4 So.3d 1224 (Fla. 1st DCA 2009)(table).

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 and a subsequent amended motion. ECF No. 19, Exh. N.

---

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

The amended motion was summarily denied in part as to some claims and an evidentiary hearing was ordered as to other claims, including the two ineffective-assistance claims at issue in this case. Petitioner was represented by appointed counsel. The evidentiary hearing commenced on December 16, 2010, but was suspended so that Petitioner could undergo a competency evaluation. *Id.* Exh. S, T. Petitioner was adjudicated competent to proceed. ECF No. 19-10 (Exh. Y) at 33-36. The hearing resumed on May 25, 2011. *Id*. Exh U. On November 3, 2011, the state court denied the remaining 3.850 post-conviction claims on which evidentiary proceedings had been held. *Id*. Exh. Z. The First DCA *per curiam* affirmed without opinion. *Id*. Exh. DD; *Harden v. State*, 96 So.3d 887 (Fla. 1st DCA 2012)(table).

The instant petition, which Respondent concedes is not time-barred, followed.[3] Petitioner asserts two claims of ineffective assistance of trial counsel: (1) his trial counsel performed deficiently by failing to investigate Petitioner's competency to stand trial; and (2) his trial counsel performed deficiently by failing to call two alibi witnesses, Petitioner's mother and

---

[3]Respondent concedes that the original petition was timely, and states that Petitioner's amended petition, while untimely, raises the same issues as the original petition and therefore Petitioner's claims relate back to the timely petition.

grandmother. ECF No. 9.[4] Respondent concedes that both of these claims were exhausted in the state courts. ECF No. 19.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief

---

[4]Petitioner's competency during his postconviction proceedings is not at issue in this case.

only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); see Burt, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." Id. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under Strickland[5]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" Id. (quoting Stone v. Powell, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

---

[5] Strickland v. Washington, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

In *Harrington*, the Supreme Court held that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." "Under *Harrington's* general rule, then, a state court's simple one-word affirmance is presumed to be an adjudication on the merits of the petitioner's claim." *Shelton v. Secretary, Dept. of Corrections* 691 F.3d

1348, 1353 -1354 (11th Cir. 2012).

## *Claim 1: Ineffective assistance concerning Petitioner's competency*

Petitioner argues that his trial counsel was ineffective for failing to have him evaluated for competency to stand trial. Petitioner contends that he was on psychotropic medications, had mental health problems, and that he was "slow" and had been in special education classes. He claims that he was unable to understand the trial proceedings. Petitioner argues that rather than investigating his mental competency, trial counsel admittedly pursued a trial strategy of characterizing Petitioner as "slow" in order to elicit sympathy or show that he was merely a follower in the robbery scheme. ECF No. 9.

In rejecting this claim on postconviction review following the evidentiary hearing, at which Petitioner's trial counsel, Michael Grabner, testified, the state court explained the *Strickland* standard and then analyzed this issue at length. In view of the thorough nature of the state court's discussion, the Court will set out the relevant parts of the decision:

> [T]he Defendant claims that his trial counsel was ineffective for failing to have the Defendant evaluated for competency to stand trial. He claims that he was on psychotropic medications and had mental health problems, and that he was slow and had been in special education classes. He claims that he was unable to understand what was transpiring during the

proceedings.

 First, it is important to note that simply having mental problems or educational difficulties, or being on psychotropic medication, does not mean a person is incompetent to stand trial. Under Rule 3.210(b), *Florida Rules of Criminal Procedure*, "If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion, and may order the defendant to be examined by no more than 3 experts, as needed, prior to the date of the hearing." Under Rule 3.21l(a)(2), in determining whether a defendant is competent, experts are to consider, along with any other factors they deem relevant, the defendant's capacity to:

>  (i) appreciate the charges or allegations against the defendant;
> (ii) appreciate the range and nature of possible penalties, if applicable, that may be imposed in the proceedings against the defendant;
> (iii) understand the adversary nature of the legal process;
> (iv) disclose to counsel facts pertinent to the proceedings at issue;
> (v) manifest appropriate courtroom behavior; and
> (vi) testify relevantly.

As the Florida Supreme Court has said, "Rule 3.210 ... requires that a motion for competency examination be made in good faith and on reasonable grounds to believe the defendant is incompetent to stand trial, which requires a recital of the specific observations of and conversations with the defendant which have formed the basis of such motion, and which in the committee note indicates that such a motion should not be

'boiler plate.'" *Groover v. State*, 514 So.2d 97, 99 (Fla. 1991). Where there is no evidence calling a defendant's competency into question, counsel is not bound to seek an evaluation under the Rule. *Id*.

Mr. Grabner testified at the postconviction evidentiary hearing that he knew the Defendant had difficulties with reading, and he accommodated that by offering to read all of the discovery to the Defendant, and he was cognizant of that issue. However, Mr. Grabner did not believe there were any issues with competency. The Defendant did understand the proceedings, understood the adversarial nature, the roles of the parties, and the charges and penalties he was facing. The Defendant testified at the postconviction evidentiary hearing that he did not understand anything about the trial proceedings and did not know what was going on. This testimony was contradicted by Mr. Grabner. Mr. Grabner also testified that the Defendant never told him that he was having trouble understanding anything. The transcript of the trial reflects that the Defendant could, and did, testify relevantly, and exhibited appropriate courtroom behavior. Judge Simmons presided over the trial proceedings and was able to view the Defendant's courtroom behavior and his trial testimony, and nothing indicated to him that he needed to have the Defendant evaluated for competency on his own motion, as he did during the first part of the postconviction evidentiary hearing in this case. The Defendant's trial testimony demonstrates that the Defendant's contention that he did not understand anything and did not know what was going on is not credible. Finally, Mr. Grabner testified that the Defendant's slow affect actually played into his defense strategy, and that he believed that the Defendant would come off to the jury as a person who was easily led by others, which would play into his defense that the Defendant purchased some of the items found at the scene of the robbery (hats and bandanas) for Broxton and Smith at a Walmart (which the State had video footage of) because they directed him to and he was simply a follower, but that they dropped him off afterward and he did not participate in the

robbery. To the extent that the Defendant argued at the evidentiary hearing that Mr. Grabner should have requested that the Court instruct the jury that the Defendant was on psychotropic medication, such an instruction would have contradicted this defense strategy.

The Defendant's postconviction counsel introduced a packet of medical records from the Bay County Jail as an exhibit at the hearing in support of his argument. Again, simply being on psychotropic medications or having mental problems does not make a defendant incompetent to stand trial under the criteria outlined in the rule. However, the Court notes that on the first page of that exhibit, which is dated February 19, 2008, the provisional diagnosis and the section of Dr. Mason's notes both say that the Defendant's psychosis was "in remission." (See portion of document that states "Psychosis NOS [not otherwise specified] in remission"). The trial in this case was conducted from March 4-6, 2008. These records show that any psychosis the Defendant allegedly had suffered from was "in remission" only two weeks prior to the trial.

In order to demonstrate prejudice from trial counsel's failure to investigate his competency, a petitioner has to show that there exists at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial. *Nelson v. State*, 43 So.3d 20, 29 (Fla. 2010). The Defendant has not demonstrated a reasonable probability that an evaluation would have revealed he was incompetent to stand trial under the factors for determining competency outlined in the rule. Further, the Florida Supreme Court has held that simply being on psychotropic medication does not necessarily render a defendant incompetent or require counsel to request a competency evaluation. *See Nelson*, *supra*, at 29-30. . . . Here, as in *Nelson*, the Court conducted an evidentiary hearing on the Defendant's claim, but counsel testified that he saw no issue regarding the Defendant's competency and no indication that he should seek an evaluation, and testified that the Defendant understood the

proceedings, was able to participate in his defense, and testified relevantly and exhibited appropriate behavior in the courtroom. The Court finds that the Defendant has demonstrated neither deficient performance by counsel or resulting prejudice. These Grounds are due to be denied.

ECF No. 19-11 (Exh. Z) at 4-6.

The state court applied the *Strickland* standard to Petitioner's claim, and made specific factual and legal findings in determining that Petitioner failed to demonstrate either deficient performance or prejudice in connection with trial counsel's representation and Petitioner's competency. In view of the state law standards governing a defendant's competency to stand trial, and Mr. Grabner's testimony that Petitioner understood the proceedings, the adversarial nature, the roles of the parties, and the charges and penalties he was facing, the state court found that there was no factual basis for Mr. Grabner to request a competency hearing. In making this finding, the state court specifically credited Mr. Grabner's testimony over Petitioner's testimony that he did not understand the proceedings. The state court's findings as to witness credibility are presumptively correct. *See Brown v. Head*, 272 F.3d 1308, 1314 (11th Cir. 2001); *Freund v. Butterworth*, 165 F.3d 839, 859 n.30 (11th Cir. 1999) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine

credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

Further, the state court found that Petitioner's claim also failed on the prejudice prong of *Strickland* because under the governing state standards Petitioner had not shown a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial. Although Petitioner reasserts the same claims in his federal habeas petition that he made in his Rule 3.850 motion, he points to no clear and convincing evidence that rebuts the presumption of correctness that is afforded to the state court's factual findings.  See 28 U.S.C. § 2254(e)(1). He likewise points to no authority that would support a conclusion that the state court's legal conclusions were contrary to, or an unreasonable application of, clearly established federal law, including *Strickland*.  See 28 U.S.C. § 2254(d)(1).  On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

### *Claim Two: Counsel's failure to call two alibi witnesses*

Petitioner contends that his trial counsel was ineffective for failing to investigate and call his grandmother, Barbara Prince, and his mother, Angelia Harden, as alibi witnesses at trial.[6] Petitioner contends that Prince and Harden would have testified that that early on the morning after the crime, around 6 a.m., Petitioner was asleep on Harden's floor, thereby establishing that he could not have returned to Jacksonville from Panama City within the time frame established for the robbery. ECF No. 9.

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).

The evidence presented in the postconviction hearing included deposition testimony by Barbara Prince and Angelia Harden, Mr. Grabner's testimony, Petitioner's testimony, and a written statement that Petitioner gave his trial counsel during the underlying criminal case. After weighing

---

[6]In his Rule 3.850 motion, Petitioner also argued that counsel was ineffective for failing to call Star Nesmith as an alibi witness, but at the evidentiary hearing postconviction counsel advised the court that Nesmith told him she knew nothing and did not want to be involved. ECF No. 19-11 (Exh. Z) at 2.

this evidence in light of the applicable *Strickland* standard, the state court made the following findings:

> In consideration of this ground, it is important to note that at trial the State established, through cellular telephone records and through tying cellular telephone calls to specific cell phone tower locations, that the defendants were back in Jacksonville by 7:08 A.M. Eastern time at the absolute latest. . . . The Defendants had driven back to Jacksonville after committing the robbery and murder in Panama City in the early morning hours of October 3. Ahmad Smith testified that they returned to Jacksonville around 7:00 A.M. . . . .
>
> The Defendant claims in his motion that his mother and grandmother would have testified that they saw him sleeping on the floor in his mother's home in Jacksonville at approximately 6:00 A.M. on October 3, and that they woke him up and asked him whether he wanted any breakfast from Krystal's, and that he did, so they went out and brought back "breakfast in a cup" for him. In affidavits attached to the Defendant's motion, Ms. Harden claimed to have seen the Defendant and woke him up at approximately 6 A.M., while Ms. Prince claimed to have seen the Defendant and seen Ms. Harden wake him up at approximately 6:45 A.M. Ms. Prince and Ms. Harden both gave depositions for the purposes of this hearing, which the Defendant entered into evidence at the hearing. Ms. Harden claimed to have seen the Defendant at approximately 6:00 A.M., while Ms. Prince claimed to have seen him between 6:30 and 7:00 A.M. There were also inconsistencies in their deposition testimonies as to who else was present in the home at the time.
>
> At the evidentiary hearing, the State introduced as an exhibit a copy of a letter that the Defendant wrote to Mr. Grabner, postmarked April 30, 2007. . . . Regarding the morning of October 3rd, the Defendant wrote, "And know I didn't come out on October 3, I was at home with my kids Kisha got up at 6:00 A.M. to get ready for work. I got up at 7:00 A.M.

to get my boys ready for school then I sent them to the bus stop and got back in the bed with Keriah I got up cook brakefast [sic] at 11:00 then I clean up the house and started cooking dinner for my family." The Defendant did write about the incident with his mother and grandmother bringing him breakfast at his mother's house; however, he wrote that this occurred on **October 2nd**, the day before. The Defendant wrote, "The only day I came out was October 2nd, me and Keriah road [sic] the city bus that morning to my mother house and when we got their [sic] I put Keriah in the bed with my sister Toya then I went in the den and layed on the [floor] and went back to sleep then my mama and my grandma woke me up with brakefast [sic] in the cup . . . ." According to the Defendant's own letter, he was at his home on October 3rd and did not see his mother and grandmother, but saw them on October 2nd, before the robbery and murder had even occurred.  Even his account of the breakfast incident differed from his mother and grandmother's, as he claimed that he brought Keriah (his young daughter) with him and that his sister Toya was in the house, while Ms. Harden testified that she did not remember any children being in the house and that her best recollection was that the only people there were the Defendant, Ronnie, Shawn, herself and her mother. (Angelia Harden deposition transcript at p.16-17, 26-27), and Ms. Prince testified that Latoya was not there that day and that they would have brought the children something to eat if any children had been there. (Barbara Prince deposition transcript at p.10-11, 12-13).

More importantly, however, the State introduced at the hearing a copy of a sheet of notes from Mr. Grabner's file [on which] Mr. Grabner had written:

> Ms. Prince + Angela
> - Morning of the 3rd, 7-8ish O'clock, cashed disability gov't check went to Crystal's, brought it to [Defendant] who was sleeping on the floor of the Den.

>    - He was watching his daughter Tiara [sic] (4 yrs old) + child of Lakeisha Upson.

Mr. Grabner testified at the evidentiary hearing that when he spoke to Ms. Harden and Ms. Price, they told him they had seen the Defendant between 7 and 8:00ish, as reflected in his contemporaneous notes, and that this did not provide an alibi for the Defendant, as he knew that the State's timeline proved that the defendants were back in Jacksonville by 7:08 A.M. at the absolute latest. It was possible for the Defendant to have participated in the crime and for his mother and grandmother to still have seen him at his mother's house in Jacksonville between 7:00 at 8:00 A.M . He testified that he spoke with Ms. Harden and Ms. Prince before trial, and that they were apprehensive about testifying if it would not move the case forward or help the Defendant, and the Defendant also did not want to put them through testifying if it would not help. Thus, Mr. Grabner testified that he made the decision not to call them as witnesses, and to establish the Defendant's alibi through his own testimony. It should also be noted that Ms. Prince was asked during her deposition whether she ever told Mr. Grabner, that it was somewhere around 7:00 or 8:00 when she got to her daughter's house and woke the Defendant up, and she testified that she might have said that. (Barbara Prince deposition transcript at p.13).

Based upon the foregoing, the Court finds that Defendant has not demonstrated deficient performance by counsel based upon the information available to counsel at the time of trial. Mr. Grabner investigated the Defendant's mother and grandmother as alibi witnesses, but discovered that their testimony would not provide an alibi given the solid timeline that the State could establish through cellular telephone records, as the Defendant could have committed the crimes and still have been seen by his mother and grandmother at his mother's house in Jacksonville between 7:00 and 8:00 Jacksonville time. When his mother and grandmother were apprehensive about testifying if it could not help the Defendant, counsel made the strategic decision not to call them and to rely upon the

>    Defendant's testimony to establish an alibi.
>
>    Additionally, the Defendant cannot show prejudice given the overwhelming evidence against him presented at his trial. Ahmad Smith testified against the Defendant and placed him at the scene participating in the robbery. (*See* trial transcript at p.39-122). The Defendant was captured on video surveillance footage at Walmart buying a hat and bandanas used in the robbery, and a receipt for those items was introduced. (*Id.* at 290-303; *see also* Witness/Evidence list, State's exhibit 24). The Walmart video also captured the Defendant wearing a wristwatch with a leather band. A watch matching that watch was found at the crime scene, was tested for DNA, and had the victim, Jamie Edwards's DNA on it as a major contributor, and had DNA that was consistent with the Defendant as a minor contributor. (*See* trial transcript at p.525-531, 393-429; *see also* Witness/Evidence list, State's exhibit 7). The Defendant's girlfriend, Lakesha Upson, testified that the Defendant called her sister, Raechelle, and left a message on Raechelle's phone to tell her that he would not be home that night (a message Lakeisha listened to), and that he did not, in fact, come home. (*See* trial transcript at p.333-337). Cellular telephone records confirmed that a call was made to the Reachelle's phone from Ahmad Smith's cellular phone at l0:54 P.M., from the Monticello area, placing the Defendant in the car with Broxton and Smith on the way to Panama City from Jacksonville. (*See* Summary of Cellular Telephone Records of Jay Broxton and Ahmad Smith, and note the calls to Raechelle on the first page from Ahmad Smith's phone). These Grounds are due to be denied .

ECF No. 19-11 (Exh. Z) at 2-4.

The state court applied the *Strickland* standard to Petitioner's claim, and made specific factual and legal findings in determining that Petitioner failed to demonstrate either deficient performance or prejudice in

connection with trial counsel's investigation of possible alibi witnesses. In view of the inconsistencies between Price and Angelia Harden's statements and Petitioner's written letter to Grabner with respect to the date and time on which Price and Harden saw Petitioner at Harden's home, weighed against the "solid timeline" that the State established from the cell phone records, the state court concluded that counsel made a reasonable strategic decision not to call Harden and Price as witnesses. Mr. Grabner's testimony at the evidentiary hearing was supported by his contemporaneous notes documenting that Harden and Price told him they saw Petitioner between 7 and 8:00 on the morning of October 3. Although Petitioner argues that Grabner's testimony lacked credibility, *see* ECF No. 9, the state court plainly implicitly credited his testimony and Petitioner points to no clear and convincing evidence sufficient to rebut the trial court's findings.

      Petitioner has also failed to show that the state court's conclusion that his claim fails on the prejudice prong of *Strickland* was lacking in justification. The state court concluded that Petitioner could not show any prejudice in connection with counsel's decision not to call Harden and Price as witnesses in light of the "overwhelming" evidence against Petitioner. The evidence against Petitioner included Ahmad Smith's

testimony, the Wal-Mart surveillance video, the DNA evidence, and the testimony and cell phone records that placed him in the car with Broxton and Smith on the way to Panama City from Jacksonville. On this record, Petitioner has failed to show that the state court's rejection of his ineffective-assistance claim stemming from failure to call alibi witnesses was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 U.S. at 15.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 9, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 8th day of December 2015.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.